```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                       HOUSTON DIVISION


GREGORY A. O'NEAL,               §
                                 §
     Plaintiff,                  §
                                 §
v.                               §   CIVIL ACTION NO. H-10-1905
                                 §
CITY OF MISSOURI CITY, TEXAS,    §
                                 §
     Defendant,                  §
```

### MEMORANDUM OPINION

Pending before the court[1] are Defendant's Motion to Dismiss and Motion for Summary Judgment (Doc. 15), Plaintiff's response to Defendant's motion (Doc. 17), and Plaintiff's Motion to Add Exhibit "BR" (Doc. 21). The court has considered the motions, the responses, all other relevant filings, and the applicable law. With regard to supplementing the record, the court **GRANTS** Plaintiff's motion. Additionally, for the reasons set forth below, the court **GRANTS** Defendant's motion.

### I. Case Background

Plaintiff, pro se, filed this civil rights action in state court in Fort Bend County.[2] Defendant timely removed the action to

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docs. 19, 20.

[2] See Doc. 2, Pl.'s Pet. (filed in state court but mislabeled "Complaint").  The court notes that Plaintiff's Petition references numerous exhibits, but only Exhibit H is attached to the copy filed with this court. See id.

this court.[3]

The factual account told by Plaintiff in his pleading contains a significant amount of back story that is at best marginally related to Plaintiff's complaints against Defendant. In the interest of a thorough review of this pro se individual's lawsuit, the court includes that information in this memorandum.

In February 2006, Plaintiff sought a divorce after two months of marriage.[4] After filing for divorce, Plaintiff asked his wife to leave the house (which he had purchased prior to the marriage) and to return the keys to it.[5] She did so but "began to be very destructive in her behavior" toward Plaintiff.[6] For example, she called the Missouri City Police in the early morning hours on several occasions to force Plaintiff to grant her access to the house and her belongings.[7]

The divorce became final in April 2006.[8] Upon moving out, Plaintiff's wife filed a change of address notice with the U.S. Postal Service and marked it "Family," rather than "Individual."[9]

---

[3]   Doc. 1, Def.'s Notice of Removal.

[4]   Doc. 2, Pl.'s Pet., p. 1.

[5]   Id. at p. 2.

[6]   Id. at p. 1.

[7]   Id.

[8]   Id. at p. 2; see also Doc. 17-1, Ex. C to Pl.'s Mot. to Deny Def.'s Mot. for Summ. J. & Mot. for Dismissal ("Pl.'s Resp."), Final Decree of Divorce.

[9]   Doc. 2, Pl.'s Pet., p. 2.

She also rerouted some of Plaintiff's accounts to her address and opened a charge card in his name.[10] According to Plaintiff, his ex-wife continued to hack into his online accounts, including banking, mortgage, e-mail, phone, and utilities, and harassed him with instant messages and e-mail messages.[11] One day around 2:00 a.m., Plaintiff called the police because his ex-wife was banging on the doors and windows of his residence.[12]

Plaintiff complained in writing to the Sugar Land Police Department and provided information to the Missouri City Police Department.[13] The Missouri City Police questioned Plaintiff's ex-wife, who responded with false information about Plaintiff's police record and charges of insurance fraud.[14] Plaintiff wrote the Missouri City Police Department on at least three occasions to complain about the lack of investigation.[15] Upon receiving no response, Plaintiff forwarded the letters to the Mayor of Missouri City and local newspaper reporters.[16]

In June 2006, Kyle Cronk ("Cronk") contacted the Missouri City

---

[10]    Id.

[11]    Id.

[12]    Id.

[13]    Id.

[14]    Id.

[15]    Id.; see also Doc. 17-1, Exs. K-N to Pl.'s Resp., Letters to the Missouri City Police Department.

[16]    Doc. 2, Pl.'s Pet., p. 2.

Police Department to report what he believed to be mortgage fraud committed by Plaintiff.[17]  According to a notarized statement submitted to the police department, Cronk replied in July 2005 to an advertisement seeking a partner to invest in the rehabilitation of houses.[18]  Plaintiff sought between $15,000 and $30,000 and promised a fifty percent return on the investment within a short period of time.[19]  The plan was for Plaintiff to buy houses, put Cronk's name on the titles, renovate the houses, and resell them.[20]

Per Plaintiff's instructions, Cronk wire-transferred $30,000 to a title company.[21]  The next day, Plaintiff explained that $25,000 would be wired back because the title company could not release it to Plaintiff "due to their corporate structure."[22]  He requested that Cronk in turn wire that money directly to Plaintiff to pay for materials and appraisals.[23]  Plaintiff failed to provide Cronk with information on the properties purchased, a cost schedule, or a timeline and, as time elapsed, offered excuses and

---

[17]    Doc. 17-1, Ex. H to Pl.'s Resp., Offense Report Dated Dec. 15, 2009, p. 6.  This document is also attached as Exhibit H to Plaintiff's Petition (Doc. 2), and a partial copy is attached as Exhibit D to Defendant's motion (Doc. 15). For consistency's sake, the court cites only to the copy submitted by Plaintiff with his response.

[18]    Doc. 17-1, Ex. A to Pl.'s Resp., Official Statement, p. 1.

[19]    Id.

[20]    See id. at pp. 1-2.

[21]    Id. at p. 1.

[22]    Id. at pp. 1-2.

[23]    Id. at p. 2.

4

blamed various delays.[24]

When Cronk asked for his investment back, Plaintiff explained that he was not able to finish the project and offered to sign over the property to Cronk.[25]  Cronk instructed Plaintiff to sell the property and to provide Cronk with an accounting for the money he invested.[26]  On May 6, 2006, Plaintiff informed Cronk that "[a]ll of my properties have been foreclosed on and I am filing bankruptcy, my apologies and I have made every attempt possible to give you the property and/or to sell it.  I just could not keep going with 5 mortgage payments."[27]  Cronk requested a telephone conversation with Plaintiff, but Plaintiff declined to speak with him.[28]  Cronk then contacted the Missouri City Police Department in June and spoke with a detective assigned to the case, Marilyn Stepp ("Detective Stepp").[29]

In addition to speaking with Cronk and reviewing his statement, Detective Stepp searched Harris County Real Property Inquiry System for property owned by Plaintiff and obtained, via subpoena, records from the title company to which Cronk sent the

---

[24]    Id. at p. 2.

[25]    Id. at p. 3.

[26]    Id.

[27]    Id. (quoting an e-mail message from Plaintiff).

[28]    Id.

[29]    Id.; Doc. 17-1, Ex. H to Pl.'s Resp., Offense Report Dated Dec. 15, 2009, p. 5.

$30,000.[30]  Detective Stepp also spoke with Plaintiff and his ex-wife and reviewed Missouri City and Sugar Land police reports made by Plaintiff against his ex-wife.[31]  She noted that Plaintiff had an outstanding warrant out of Fort Bend County Constable Precinct 4 for theft by check.[32]  After completing her investigation, Detective Stepp sent the case to the Fort Bend County District Attorney's Office, concluding:

> Mr. O'Neal has knowingly led Mr. Cronk to believe he (Mr. O'Neal) was buying, fixing up houses, and then selling them for a profit.  The house in question that Mr. Cronk's money went [sic], was never finalized and Mr. O'Neal used the $30,000.00 dollars for his own personal use.  It appears with the numerous emails back and forth and the constant delay, that Mr. O'Neal had no intention of paying back Mr. Cronk or using his money for what he had initially indicated.[33]

In October 2006, Plaintiff contacted Detective Stepp, who informed him of Cronk's complaint.[34]  Plaintiff attempted to explain the situation to Detective Stepp and offered her documentation supporting his position.[35]  According to Plaintiff, he and business partners engaged in the purchase and sale or lease of distressed

---

[30] See Doc. 17-1, Ex. H to Pl.'s Resp., Offense Report Dated Dec. 15, 2009, p. 7.

[31] See id. at p. 8.

[32] See id.

[33] Id.

[34] Doc. 2, Pl.'s Pet., p. 2.

[35] Id.

6

properties, particularly in Houston and New Orleans.[36] The collapse of the real estate market in 2006 impacted Plaintiff's ability to sell properties.[37] This led to the conflicts with Cronk.[38] Plaintiff claimed that he "acted in good faith, in honesty and did his best to return and protect Mr. Cronk's investment and work out a settlement."[39] Detective Stepp did not review Plaintiff's documentation or request a signed statement from him and asked no other questions.[40]

When Plaintiff contacted Detective Stepp several months later to inquire about the investigation, she conveyed that she did not intend to investigate the matter any further.[41] By then, all of Plaintiff's real property at issue in the investigation had fallen into foreclosure proceedings.[42] As a result of the negative financial consequences, Plaintiff moved to Washington in April 2008 to seek employment and to be closer to his children.[43]

On December 10, 2007, a Fort Bend County grand jury indicted Plaintiff on counts of theft of property and money laundering, each

---

[36] Id. at p. 3.

[37] Id. at p. 4.

[38] See id.

[39] Id.

[40] Id. at pp. 2, 4.

[41] Id.

[42] Id. at p. 3.

[43] Id.

in an amount between $20,000 and $100,000.[44] On July 29, 2008, he was arrested in Whatcom County, Washington, on a warrant out of Fort Bend County.[45] Apparently after his arrest, a Fort Bend County grand jury indicted Plaintiff on two additional charges.[46] Almost a year later, Plaintiff pled guilty to misapplication of property and making a false statement, resulting in the dismissal of the other charges.[47] The court accepted the plea agreement, entered judgment, sentenced Plaintiff to 345 days in the Fort Bend County jail, and credited Plaintiff the full amount for time served.[48]

On April 28, 2010, Plaintiff filed this civil action in state court alleging "breach of civic duties" and "breach of implied covenant of good faith and fair dealing."[49] The focus of his

---

[44] Doc. 15-1, Ex. A to Def.'s Mot. to Dismiss & Mot. for Summ. J. ("Def.'s Mot."), Indictment; see also Doc. 17-1, Ex. H to Pl.'s Resp., Offense Report Dated Dec. 15, 2009, p. 1 (noting that a grand jury returned a true bill on December 10, 2007).

[45] Doc. 2, Pl.'s Pet., p. 1.

[46] The indictment submitted by Defendant lists only the theft of property and money laundering counts. See Doc. 15-1, Ex. A to Def.'s Mot., Indictment. However, Plaintiff's response indicates that he was indicted on two additional charges while he was jailed before negotiating a plea agreement. Doc. 17, Pl.'s Resp., p. 2; see Doc. 17-1, Ex. H to Pl.'s Resp., Offense Report Dated Dec. 15, 2009, p. 1 (noting that a grand jury returned a true bill on fraud-type felonies on April 20, 2009).

[47] Doc. 15-2, Ex. B to Def.'s Mot., Plea Agreement; Doc. 15-3, Ex. C to Def.'s Mot., State of Texas' Mot. to Dismiss.

[48] Doc. 15-3, Ex. C to Def.'s Mot., J. & Sentence, Recitation of J.

[49] Doc. 2, Pl.'s Pet., p. 5. Although Plaintiff identified breach of civic duties and breach of implied covenant of good faith and fair dealing as causes of action in his pleading, he mentions the following causes of action in his response to Defendant's motion: negligence, false arrest, malicious prosecution, and intentional infliction of emotional distress. Doc. 17, Pl.'s Resp., pp. 4-5.

complaint is that Defendant failed to conduct a "proper, fair and reasonable investigation."[50] Plaintiff alleged that the investigation was biased because Defendant failed to request a statement from Plaintiff in response to Cronk's accusation and because Defendant placed Plaintiff "in jail under false allegations . . . causing him to lose his fathering of his children [sic], homes, job, all possessions, vehicles, [and to] endure pain and punishment for a crime he never committed and [that Defendant] neglected [its] duty to the community and should be made an example of."[51] He seeks actual damages in the amount of $1,000,000 and punitive damages in the amount of $2,500,000.[52] Additionally, he seeks attorney's fees in the amount of $834,000.[53]

Prior to removal, Defendant answered Plaintiff's pleading and raised several affirmative defenses.[54] Several months after removal, Defendant filed the pending motion to dismiss and for summary judgment, and Plaintiff responded.[55] The case was transferred to the undersigned in October 2010.[56] The court now considers Defendant's dispositive motion.

---

[50] Doc. 2, Pl.'s Pet., p. 4.

[51] Id.

[52] Id. at p. 5.

[53] Id.

[54] See Doc. 3, Def.'s Original Answer.

[55] See Doc. 15, Def.'s Mot.; Doc. 17, Pl.'s Resp.

[56] See Doc. 20, Order Transferring Case.

## II. Summary Judgment Standard

Defendant moves for dismissal under Federal Rule of Civil Procedure ("Rule") 12(b)(6) and summary judgment under Rule 56. Because both parties rely on materials outside the pleadings, the court reviews the motion as one for summary judgment. See Fed. R. Civ. P. 12(d).

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex


Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992). If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment. Celotex Corp., 477 U.S. at 322. In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial. Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987). However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

**III. Analysis**

Based on Plaintiff's original pleading, his response to the pending motion, and the court's understanding of his claims, the court finds that Plaintiff is asserting the following causes of action: 1) false arrest and malicious prosecution under 42 U.S.C. § 1983 ("Section 1983"); and 2) negligence, false arrest, malicious prosecution, and intentional infliction of emotional distress under state common law.  In its motion, Defendant requests that the court dismiss Plaintiff's Section 1983 claims because they are barred by Heck v. Humphrey, 512 U.S. 477 (1994), his false arrest claim because the grand jury indictment broke the chain of causation, and his state law claims because the Texas Tort Claims Act[57] ("TTCA") does not waive governmental immunity for those claims.

Plaintiff does not respond directly to the legal concerns raised by Defendant.  Rather, he complains of the circumstances surrounding his plea agreement and questions the validity of his conviction.  He cites to portions of the Texas Civil Practice and Remedies Code unrelated either to the waiver of governmental immunity specifically or to his case generally.[58]  He also argues that the city is not entitled to qualified immunity, that his

---

[57]   See Tex. Civ. Prac. & Rem. Code §§ 101.001-101.109.

[58]   For example, Plaintiff's points the court to a provision allowing a local government to pay damages awarded against an employee of the local government and a provision entitling persons to compensation for wrongful imprisonment. See Doc. 17, Pl.'s Resp., p. 3 (citing Tex. Civ. Prac. & Rem. Code §§ 102.002; 103.001).

arrest lacked probable cause, and that the city's negligence "shocks the conscience." By the court's count, Plaintiff attaches seventy exhibits, almost all of which relate to Plaintiff's claim of innocence and have no relevance on the civil claims in this lawsuit. Under the heading "Elements Surrounding City of Missouri City Case," Plaintiff lists elements and definitions of several theories of recovery and legal principles but fails to identify facts or cite evidence that satisfy the elements of any cause of action.[59]

The court agrees with Defendant that Plaintiff's case should be dismissed entirely because his Section 1983 claims are barred by Heck v. Humphrey and his state law claims do not fit within the statutory waiver of governmental immunity.

**A.   Section 1983**

A plaintiff can establish a prima facie case under Section 1983[60] by alleging 1) a violation of a federal constitutional or statutory right; and 2) that the violation was committed by an individual acting under the color of state law. Doe v. Rains Cnty.

---

[59] See Doc. 17, Pl.'s Resp., pp. 4-6.

[60] Section 1983 provides that:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

13

Indep. Sch. Dist., 66 F.3d 1402, 1406 (5th Cir. 1995). The statute creates no substantive rights, but only provides remedies for deprivations of rights created under federal law. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

When a plaintiff who brings a Section 1983 claim for damages has been convicted or sentenced in a prior criminal proceeding, the district court must consider whether "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." Heck, 512 U.S. at 487. Should there exist such a connection between the Section 1983 claim and the plaintiff's conviction or sentence, the plaintiff has no cause of action under Section 1983 unless the conviction or sentence is expunged or invalidated. Id. at 487.

The Supreme Court of the United States ("Supreme Court") explained:

> [I]n order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . .

Id. at 486-87. The Supreme Court emphasized that it would be inappropriate to allow a collateral attack on the validity of criminal judgments via civil tort actions, pointing to judicial policies of "avoid[ing] parallel litigation over the issues of

14

probable cause and guilt" and preventing "conflicting resolutions arising out of the same or identical transaction." Id. at 484-85 (quoting 8 S. Speiser, C. Krause, & A. Gans, American Law of Torts § 28:5 (1991)).

Plaintiff pled guilty to misapplication of property and false statement, and the state court entered judgment against Plaintiff, sentencing him to 345 days in county jail. Plaintiff has not alleged, much less submitted evidence, that his "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus" as required. See Heck, 512 U.S. at 486-87. Because judgment in favor of Plaintiff on his Section 1983 claims of false arrest and malicious prosecution necessarily would call into question the validity of his criminal sentence, the claims are barred. See Wells v. Bonner, 45 F.3d 90, 94-95 (5th Cir. 1995); Heck, 512 U.S. at 484-85, 487.

As this determination requires complete dismissal of Plaintiff's Section 1983 claims, the court need not consider Defendant's alternative argument regarding Plaintiff's false arrest claim.

### B. State Law Claims

As a municipality, Defendant is entitled to the protection of governmental immunity. Mission Consol. Indep. Sch. Dist. v.

Garcia, 253 S.W.3d 653, 655 n.2 (Tex. 2008)(stating that municipalities are protected by governmental immunity). Texas governmental units enjoy immunity from claims unless Texas has consented to allowing suit. Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 224 (Tex. 2004). Texas waives immunity for a limited number of situations as described in the TTCA. Mission Consol. Indep. Sch. Dist., 253 S.W.3d at 659 (stating that the TTCA is "the only, albeit limited, avenue for common-law recovery against the government").

Defendant qualifies as a governmental unit under the TTCA. See Tex. Civ. Prac. & Rem. Code § 101.001(3)(B). Accordingly, Plaintiff can maintain his state law claims of negligence, false arrest, malicious prosecution, and intentional infliction of emotional distress only if they fit within the waiver parameters of the TTCA.

Generally, the TTCA waives immunity for property damage, personal injury and death caused by wrongful acts of employees if arising from the use of a motor-driven vehicle or from a condition or use of tangible personal or real property. See Tex. Civ. Prac. & Rem. Code § 101.021. No waiver of immunity is available for claims arising out of any intentional tort. Tex. Civ. Prac. & Rem. Code § 101.057.

Although Plaintiff lists the elements of negligence in his response and argues that the law imposes a duty to act with due

care, he alleges no facts and presents no evidence that Plaintiff suffered any harm arising from actions of the type for which the TTCA waives governmental immunity. The remaining three state law claims are intentional torts, which also are not within the statutory waiver of immunity.

Plaintiff's state law claims cannot be maintained for the above reasons. The court need not consider Defendant's contention that Plaintiff failed to provide Defendant with notice required by the TTCA or its argument regarding an alternative reason for the dismissal of the false arrest claim.

### IV. Conclusion

Based on the foregoing, the court **GRANTS** Defendant's motion.

**SIGNED** in Houston, Texas, this 15th day of April, 2011.

Nancy K. Johnson
United States Magistrate Judge